IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

RANDALL MESSINA,                                )
                                                )
          Plaintiff,                            )
     vs.                                        )
                                                )
                                                )
CITY OF WASHINGTON, MISSOURI,                   )
                                                )    CAUSE NO.: 08-cv-506
                                                )
RICHARD F. STRATMANN, individually,             )    JURY TRIAL REQUESTED
and in his official capacity as Mayor of        )
the City of Washington, Missouri,               )
                                                )
KEN HAHN, individually, and in his official     )
capacity as Chief of Police of                  )
the City of Washington, Missouri,               )
                                                )
ROBERT ENGEMANN, TIM OVERSCHMIDT                )
JOHN RHODES,KEVIN HELLMANN,                     )
TIM BRINKER, CONNIE GROFF,                      )
MARTY TUDOR,AND CAROLYNN WITT,                  )
individually and in their official capacities as)
members of the Washington, Missouri, City       )
Council, and                                    )
                                                )
KEVIN E. MENEFEE, individually,                 )
and in his official capacity as a Captain of    )
the Police Department of the City of            )
Washington, Missouri,                           )
                                                )
          Defendants.                           )
                                                )

## **COMPLAINT**

COMES NOW, Plaintiff, Randall Messina, by and through his undersigned attorneys and

files his Complaint, and for said Complaint states:

## STATEMENT OF CLAIMS & PARTIES

1.     Plaintiffs' Complaint consists of Five counts as follows: wrongful discipline and termination in violation of his First Amendment free speech rights (Count I), conspiracy to violate Plaintiff's First Amendment rights (Count II), a violation of Plaintiff's substantive due process rights (Count III), wrongful termination in violation of Missouri public policy – whistleblowing (Count IV), and wrongful termination for tacking action that the public policy of Missouri would encourage (Count V).

2.     Plaintiff Randall Messina (hereinafter "Messina") is a citizen and resident of Warren County, State of Missouri, within the geographical boundaries of the Eastern Division of this Court.

3.     Defendant City of Washington (hereinafter, "City") is a municipal corporation of the third class, located in the County of Franklin, State of Missouri, within the geographical boundaries of the Eastern Division of this Court.

4.     Defendant Richard F. Stratmann (hereinafter, "Stratmann") is the Mayor of Defendant City.  Stratmann is a citizen and resident of the Eastern District of Missouri.  He is sued in both his official and individual capacities.

5.     Defendant Ken Hahn (hereinafter, "Hahn") is the Chief of Police of Defendant City.  Hahn is a citizen and resident of the Eastern District of Missouri.  He is sued in both his official and individual capacities.

6.     Defendants Robert Engemann, Tim Overschmidt, John Rhodes, Kevin Hellman, Tim Brinker, Connie Groff, Marty Tudor, Carolynn Witt ( the "Council Members") are all members of the City Council of Defendant City. They are all citizens and residents of the Eastern District of Missouri.  They are sued in both their official and individual capacities.

7.     Defendant Kevin E. Menefee (hereinafter, "Menefee") is the Captain of the police force of Defendant City.  Menefee is a citizen and resident of the Eastern District of Missouri. He is sued in both his official and individual capacities.

8.     At all time herein relevant, the Defendants and each of them were acting under color of state law.

9.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, as well as the Fifth and Fourteenth Amendments to the United States Constitution.   The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331.  Plaintiff further invokes the jurisdiction of this Court granted by 28 U.S.C. §1367 to hear and decide claim arising under state law.

10.     Plaintiff demands a trial by jury pursuant to Fed.R.Civ.P. 38(b).

## FACATUAL ALLEGATIONS

11.     On our about August 2, 2005, Messina was hired by Defendant City as a patrol officer by the City Council of Defendant City.

12.     During his employment with Defendant City, Messina received several performance reviews pursuant to Washington Police Department Policy Manual,  General Order Number 01-G-11, Performance Standards (Effective  Date: November 1, 2001).  Each time Messina's performance was reviewed he received evaluations ranging from Meeting Expectations to Exceeding Expectations.

13.     During the course of his employment Messina voluntarily formed and led a mounted patrol division, going so far as to have his family donate the horses used by the division.

14.     In early December, 2007, Messina, at the suggestion of his superiors, applied to attend Field Training Officer class.  After completion of this training, Messina would have been responsible for the training and development of new officers within the police Department.

15.    Further, as recently as December 22, 2007, Defendant Hahn identified Messina as one of his better hires because of his positive attitude, demeanor and work ethic.

16.    On or about August 16, 2007, Defendant Hahn authored an email to all police officers indicating that Defendant City expected to have a deficit of $630,000.00 for the fiscal year commencing on October 1, 2007.

17.    In his email, Defendant Hahn outlined that step pay increases would be eliminated and that overtime work would be paid by offering comp time rather than cash compensation.

18.    Hahn indicated that he expected these measures to save Defendant City $200,000.00

19.    On information and belief, Defendant Hahn, Defendant Stratmann, and Defendant Menefee had multiple conversations and/or exchanged correspondence between August 16, 2007 and November 1, 2007, concerning the ability of the police department to generate additional revenue for Defendant City through a quota system to enable Defendant City to reduce its expected deficit.

20.    In a November 1, 2007 staff meeting, Defendant Hahn outlined new "performance standards" for police officers of Defendant City.  The new "performance standards" required each patrol officer to reach a quota of arrests, written reports, tickets issued, warnings issued and self-initiated activities.

21.    In the minutes of a November, 15, 2007 staff meeting, Defendant Hahn set out in writing the quota based "performance standards" to be met by each patrol officer for the above categories and the consequences for not meeting said standards.

22.    The quota system outlined in the November 1, 2007 staff meeting and reduced to writing in the minutes of the November, 15, 2007 staff meeting were never reduced to a general order and General Order 01-G-11 setting out the standard for performance evaluations was never

4

retracted, repealed, or amended to eliminate existing performance standards or incorporating the new quota system.

23.     During the period beginning November 1, 2007 and ending December 31, 2007, Messina continued to perform his duties as a patrol officer in the manner in which had earned him Meeting Expectations or Exceeding Expectations ratings.

24.     On January 15, 2008, Defendant Menefee generated an email directed to Lt. Lynn Thompson informing him that Messina has failed to meet the quota based "performance standards." The email set out that Messina was deficient in the areas of Arrests, Reports, Traffic Warnings and Self Initiated Activities. The email directed Thompson to speak to Messina and "give him his first notice."

25.     The email from Defendant Menefee contained no attachment or information in the body of the email indicating the magnitude of Messina's failure, nor did it provide any direction to Thompson on how to counsel Messina to improve his performance. A true and correct copy of the email is attached hereto as Exhibit 1 and incorporated herein by this reference for all relevant purposes.

26.     The email contained a paragraph indicating to Thompson that since his entire squad had failed meet the quotas set forth in the "performance standards" for the quarter, that Thompson was being given his "first notice for failing to meet performance standards for a supervisor."

27.     On January 15, 2008, Lt. Thompson informed Messina in person that he was given his "first notice" for failing to meet the Department's new quota driven standards.

28.     In the early morning hours of January 16, 2007, Messina directed an email to Lt. Thompson expressing his concerns over the "new evaluation" system for patrol officers. (A true and correct copy of this email is attached hereto as Exhibit 2 and is incorporated herein by this

reference for all relevant purposes).  In the correspondence, Messina sets out the following areas of concern:

    a.  He details his concern about being rated substandard for the first time in his fifteen year law enforcement career;

    b.  He question the strictly quantitative evaluation of patrol officers by pointing out external factors that have an impact on a patrol officer's ability to reach the performance standards;

    c.  He suggests that the new quota evaluation system will adversely effect morale within the department;

    d.  He makes reference to the criteria used in the evaluation system set out in General Order Number 01-G-1, which focuses on the total performance of an officer and not just writing tickets;

    e.  He states that he believes that he has gone above and beyond in demonstrating his commitment to Defendant City; referencing the extra hours and donation of horses associated with the mounted patrol;

    f.  On an unrelated matter; Messina expresses concern regarding the level of training to be provided to new officers based on the selection of a particular officer for FTO training.  Messina's comments were based on that officer's overall level of policing experience.

29.    Upon receiving the email, Lt. Thompson responded that "[he] did not have all the answers" regarding the new "performance standard" quotas, and that he would forward Messina's concerns to Defendants Menefee and Hahn for their review.

30.    On information and belief, Lt. Thompson forwarded Messina's email to Defendants Menefee and Hahn.

31.     Upon receipt of the email Defendant Hahn became incensed and wrote an email on January 16, 2008, addressing "minor grumblings" about the new "standards," which in his words were received "ironically from the officers who have not met them," a thinly veiled reference intended to disparage and embarrass Messina. A true and correct copy of the email is attached hereto as Exhibit 3 and is incorporated herein by this reference for all relevant purposes.

32.     Additionally, upon information and belief, Defendant Hahn took the following actions:

a.  In conjunction with Defendant Menefee, they made the decision that Messina's legitimate expression of concern was tantamount to a challenge to Defendant Hahn's authority;

b.  In conjunction with Defendant Menefee, they made the decision that they no longer wanted Messina to be part of the police department, and thereafter, ordered the disbanding of the mounted patrol, believing that this unwarranted action would anger Messina and cause him to quit, and/or discussed finding or creating a reason to fire Messina if he did not quit; and

c.  To facilitate the disbanding of the mounted patrol, Defendant Hahn initiated a meeting on or about January 17, 2008, with Defendant Stratmann at which time Defendant Hahn discussed Messina's email and Defendant Hahn's plan to terminate the mounted patrol and to push Messina to quit.

33.     Upon receiving the approval of Defendant Stratmann, Defendant Hahn authored a letter dated January 17, 2008 to Messina informing Messina of the disbanding of the mounted patrol.

34.     On January 18, 2007, Defendant Hahn through Defendant Menefee summoned

Messina to a meeting purportedly to discuss his email and his performance vis-a-vis the quota based "performance standards."

35.     Defendant Hahn started the meeting by stating that Messina, under the old (and only officially adopted) performance standards was, in fact, an exemplary officer.  However, Defendant Hahn stated that under the new "standards" Messina had not met his goals.

36.     Defendant Hahn next addressed the email, referring to it as disturbing.

37.     Defendant Hahn first criticized Messina for removing his name from consideration for FTO training.  Defendant Hahn then began to attack Messina's concerns regarding the selected candidate stating that Messina didn't work with the officer, that Messina's legitimate concerns were just Messina's opinion, that only Defendant Hahn's and Defendant Menefee's  opinion counted.  While ignoring the specific concerns articulated by Messina, Hahn further stated that if Messina had legitimate concerns he should bring them forward.

38.     When Messina attempted to explain his statements, he was shouted down.

39.     Discussion then centered on the quota system.  When Messina attempted to explain the effect the new "standards" were having on department morale, he was shouted down and told that "you control your own morale."

40.     When Messina attempted ask why he was being disciplined, Defendant Hahn yelled that he was not being disciplined, a position inconsistent with the fourth paragraph of his January 16, 2008 email.[1]

41.     When Messina asked what the meaning of a first notice meant, he was yelled at for not reading his emails.

42.     When Messina suggested that it was unreasonable to require numeric goals;

---

[1] Ironically, Defendant Hahn begins this paragraph with the statement that no officer will receive "substantive discipline under these new standards, however, the balance of the paragraph goes on to describe a classic progressive discipline process ending with an offending officer receiving "a reprimand of some type."

Menefee stated that if goals weren't met, it meant that officers were just sitting in their cars; and that [Messina] should "get off his ass" and write tickets.  Tickets generate revenue for the City.

43.     When Messina attempted to obtain an explanation of how his other contributions, including his work with the mounted patrol was to be factored into his overall evaluation, Defendant Hahn exploded, stating the he was tired of having the mounted patrol held over his head.  He then produced the letter he had authored the day before, threw it across the table at Messina and shouted that the mounted patrol had been disbanded.  In response, Messina stated that the agreement regarding the horses used in the mounted patrol was between Defendant Stratmann and  his wife, Defendant Hahn shouted that he had talked to Defendant Stratmann and that Messina didn't even want to know what Defendant Stratmann had said about the mounted patrol.

44.     Messina stated that he would continue to perform his job in the manner he had in the past, but would not follow a directive requiring specific numeric outcomes that he believed to be unethical and/or illegal, reminding Defendant Hahn that upon his hiring he had told Defendant Hahn that he would do whatever he was asked so long as it was not unethical or illegal.

45.     Defendant Hahn then shouted that the quota/"performance standards" were not illegal.  Messina continued to assert his belief that quotas were in fact unethical and illegal.  This only resulted in more shouting that Messina was being insubordinate and that, as chief, Hahn could do whatever he wanted to do.

46.     Messina next stated that Defendant Hahn had to do what he had to do.  Defendant Hahn then screamed that Messina was right, and that he could ask for his badge and gun at any time.  Messina acknowledged that Defendant Hahn had that authority.

47.     In response to Messina's statement, Defendant Hahn told Messina to put his badge and gun on the desk.  Messina complied.   Defendant Hahn told Messina to have his resignation prepared in five minutes.

48.     Messina responded that he believed that he had been fired and that he was not resigning.  Messina then picked up his gun and badge.  Defendant Hahn then screamed at Messina that he was suspended.  When Messina inquired regarding the length of the suspension, Defendant Hahn shouted that they would let him know and that Messina was to leave the police station immediately.

49.     When Messina stated that he wanted to get his personal belongings, Defendant Hahn told him to get his things and leave, and had him escorted from the police station.

50.     At some time after his meeting with Messina, Defendant Hahn met with Defendant Stratmann and, upon information and belief, requested that Messina be terminated for insubordination, even though Messina had not been insubordinate at any time.  Without further investigation or inquiry, Defendant Stratmann sent Messina a letter dated January 24, 2008 but not received by Messina until January 26, 2008, informing Messina that he was placed on suspension without pay retroactive to January 18, 2008.  Defendant Stratmann further informed Messina that he would seek the City Council's concurrence to terminate Messina's employment.

51.     On January 25, 2008, Messina appeared on KSDK television (Channel 5) and informed the general public of his objections to the Washington Police Department's quota system implemented when the City needed more money.  He expressed concern for fellow officers and the citizens of Washington, Missouri because of the department's quota system.

52.     On February 4, 2008, the Defendant Council Members without further investigation or inquiry, voted 6-0, two absent, to terminate Messina's employment at the request of Defendants Stratmann, Hahn, and Menefee.

53.     By letter dated February 5, 2008, Defendant Stratmann informed Messina he was fired.

54.     At the time of his termination, Messina was a patrol officer paid on an hourly basis and he received health and life insurance benefits from the City of Washington, Missouri.

## COUNT I -- 42 U.S.C. SECTION 1983
## VIOLATION OF THE FIRST AMENDMENT RIGHT TO FREE SPEECH

55.     Plaintiff incorporates by reference as if fully set forth herein paragraphs 1 though 54 of this Complaint.

56.     Messina was suspended and then terminated by the Defendants, who have final policymaking authority for the City.

57.     Messina's speech, and more specifically, his speech to Lt. Thompson, Defendant Hahn, Defendant Menefee, and the general public through KSDK Channel 5, all at a reasonable time and in a reasonable manner, to include his criticism of the new quota based "performance standards," and his questioning of their legality and ethics, as well as their effect on law enforcement officers and the citizens of the City of Washington, Missouri, was a motivating factor and/or played a part in the Defendants' decision to discharge Messina.

58.     Messina's speech as set forth in paragraph 57 herein was not part of his duties as a law enforcement officer of the City of Washington, and therefore, made as a private citizen, even when directed to his superiors within the Department.

59.     Messina's speech regarding the new quota based "performance standards," their legality and ethics, and their effect on law enforcement in the City of Washington, Missouri constituted speech regarding a matter of public concern.  Messina's constitutionally protected

interest in free speech regarding matters of public concern outweighs any interests Defendants might have in preventing such speech.

60.    Messina's protected speech made at a reasonable time and in a reasonable manner did not render the City's police department inefficient, and Messina's speech did not disrupt City operations in any way.

61.    Messina's suspension and termination both qualify as adverse employment actions authorized and approved by the Defendants acting under color of state law.

62.    Plaintiff's termination by Defendants under color of state law violates his rights secured by the Constitution of the United States, specifically the First, Fifth and Fourteenth Amendments.

63.    As a direct and proximate result of Messina's termination by Defendants for exercising his First Amendment right to free speech, taken under color of law, Messina has sustained lost wages and other benefits of employment, emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of reputation.

64.    The conduct of Defendants as set forth herein was wanton, willful, and showed a reckless indifference to Messina's constitutional rights as set forth above.

WHEREFORE, Plaintiff prays this Court to enter judgment in his favor and against Defendants and thereafter:

A.    Order Defendants to make Plaintiff whole for any and all loses or damages he has suffered including lost wages and other benefits of employment;

B.    Award damages to Plaintiff for his emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of reputation;

12

C.     Award Plaintiff punitive damages against the Defendants named herein in their individual capacities in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

D.     Award Plaintiff the costs of this action, together with his reasonable attorneys' fees; and

E.     Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

## COUNT II – CONSPIRACY TO VIOLATE PLAINTIFF'S CIVIL RIGHTS COGNIZABLE UNDER 42 U.S.C. §1983

For Count II of his cause of action against all Defendants, Plaintiff Messina states as follows:

65.     Plaintiff incorporates by reference as if fully set forth herein, paragraphs 1 through 64 of his complaint.

66.     Defendants, acting under color of state law, conspired together and amongst themselves and as a result reached a mutual understanding to suspend and fire Messina because of his constitutionally protected speech and/or to undertake a course of conduct to protect the Defendants from the consequences of their wrongful acts and/or constitutional deprivations as officials of the City and in furtherance of this conspiracy violated Messina's civil rights.  In furtherance of this conspiracy, the Defendants committed the following overt acts:

a.     Defendants suspended Messina after he exercised his First Amendment rights by opposing the new quota-based "performance standards" because he believed them to be illegal and unethical, detrimental to the morale of the City's law enforcement officers, and contrary to the best interests of the citizens of the City of Washington, Missouri as set forth herein;

13

b.     Defendant's fired Messina after he exercised his First Amendment rights by opposing the new quota-based "performance standards" because he believed them to be illegal and unethical, detrimental to the morale of the City's law enforcement officers, and contrary to the best interests of the citizens of the City of Washington, Missouri as set forth herein; and

c.     Defendants fired Messina for the pretextural reason of "insubordination" to cover-up the unconstitutional reason for his discharge.

67.     Defendants shared the general conspiratorial objective which was to discipline and then fire Messina because of his First Amendment activity set forth herein.  Such conduct is so pervasive in the City and/or is engaged in by City officials with final policy-making authority that the City's elected officials are effectively insulated from civil sanction, and therefore, Defendants felt free to engage in the misconduct as aforedescribed, without any fear of sanction or retribution.

68.     Defendants furthered the conspiracy by participating in it from its inception or by participating in the cover-up thereof and/or ignoring the course of conduct set forth herein so as to insulate themselves and others from liability for the outrageous and unlawful acts of the Defendants as described herein, showing a tacit understanding to carry out the prohibited conduct.

69.     As a direct and proximate result of the conspiracy amongst Defendants and in furtherance thereof, Messina was suspended and then fired, and thereby deprived of constitutionally protected speech, liberty, due process, and equal protection rights secured by the First, Fifth and Fourteenth Amendments of the United States Constitution,  protected by 42 U.S.C. §1983.

70.     As a direct and proximate result of the conspiracy amongst Defendants and in furtherance thereof, Messina was discharged from his employment with the City, resulting in him sustaining lost wages and other benefits of his employment and suffering emotional pain, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

71.     The conduct of the Defendants as set forth herein was wanton, willful, and showed a reckless indifference to Messina's constitutional rights as set forth above.

WHEREFORE, Plaintiff prays this Court to enter judgment in his favor and against Defendants and thereafter:

A.      Order Defendants to make Plaintiff whole for any and all loses or damages he has suffered including lost wages and other benefits of employment;

B.      Award damages to Plaintiff for his emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress and loss of reputation;

C.      Award Plaintiff punitive damages against the Defendants named herein in their individual capacities in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

D.      Award Plaintiff the costs of this action, together with his reasonable attorneys' fees; and

E.      Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

## COUNT III -- 42 U.S.C. SECTION 1983
## VIOLATION OF SUBSTANTIVE DUE PROCESS RIGHTS

Alternatively to Counts I and II, for Count III of his cause of action against all

Defendants, Plaintiff Messina states as follows:

72.     Plaintiff incorporates by reference as if fully set forth herein paragraphs 1 through 71 of his complaint.

73.     Defendants' conduct as stated herein was so outrageous that it shocks the conscience, was arbitrary and capricious, offended judicial notions of fairness and was otherwise offensive to human dignity in that Messina was not suspended or terminated because of his job performance but because  he privately and publicly opposed the department's quota system, believing it to be illegal and unethical, detrimental to the morale of the City's law enforcement officers, and contrary to the best interests of the citizens of the City of Washington, Missouri.

74.     Messina's liberty interest in his right to engage in the common occupations of life was interfered with by the Defendants' actions in suspending and terminating him, which was patently arbitrary and capricious, and resulted in Messina's loss of employment, including wages and other benefits of such employment.

75.     In essence, Messina was terminated by Defendant Hahn for expressing legitimate concerns both privately and publicly regarding the new quota-based "performance standards," their legality and ethics, their adverse effect on the morale of the City's law enforcement officers, and their being contrary to the best interests of the citizens of the City of Washington, Missouri, which would cause embarrassment to Defendant City, Defendant Council Members, Defendant Hahn, Defendant Stratmann and Defendant Menefee when made public.

76.     As a result, Messina's substantive due process rights, as secured by the Fifth and Fourteenth Amendments to the United States Constitution were violated, actionable pursuant to 42 U.S.C. §1983.

77.     Messina's property interest in his continued employment to the extent that he could be discharged without cause only consistent with Missouri law and his liberty interest in his employment outweighs any interests the Defendants had in terminating his employment.

78.     Defendants conduct as set forth herein was arbitrary and capricious, unjustified and intended to cause injury to Messina.

79.     Messina's termination was an adverse employment action, which Defendants took under color of state law, and as a result of such action, Messina has sustained lost wages and other benefits of employment, emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

80.     The conduct of Defendants in terminating Messina as set forth herein was wanton, willful, and showed a reckless indifference to Messina's constitutional rights as set forth above.

WHEREFORE, Plaintiff prays this Court to enter judgment in his favor against Defendants and thereafter:

A.      Order Defendants to make Plaintiff whole for any and all loses or damages he has suffered including lost wages and other benefits of employment;

B.      Award damages to Plaintiff for his emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation;

C.      Award Plaintiff punitive damages against the Defendant in their individual capacities in such sum as this court believes will serve to punish them and to deter them and others from like conduct;

D.      Award Plaintiff the costs of this action, together with his reasonable attorneys' fees; and

E.      Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

## COUNT IV – WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY – WHISTLEBLOWING

For Count IV of his cause of action against all Defendants, Plaintiff Messina states as follows:

81.      Plaintiff incorporates by reference as if fully set forth herein paragraphs 1 through 80 of his complaint

82.      Upon information and belief, the City maintains a policy of insurance with respect to tort claims filed against it, and therefore, to the extent that the City may assert the defense of sovereign immunity with respect to any tort claims set forth below, the City has waived such defense under the provisions of §537.610 R.S.Mo. by maintaining such policy of insurance.

83.      Messina entered into the performance of his duties as patrol office and duly performed his duties under the terms and conditions of his employment until his suspension on January 18, 2008 and termination on February 5, 2008.

84.      Messina was discharged by the Defendants, for his criticism of the City's income generating quota system because he believed it to be illegal and/or unethical, to have a detrimental effect on the morale of the City's law enforcement officers, and contrary to the best interests of the citizens of the City of Washington, Missouri.

85.      In an effort to discredit Messina so as to minimize the negative effect of his private and public reporting of the department's quota system, Defendants fired Messina.

86.      Messina remains ready, willing and able to continue in his position as a patrol officer and to perform all the terms and conditions of that position.

87.      Defendants were aware of Messina's whistleblowing activity when they fired

him as a patrol officer.

88.     Messina's termination was in violation of Missouri public policy, which prohibits at-will employees from being terminated for reporting misconduct that violates Missouri public policy.

89.     As a result of his termination in violation of public policy, Messina has suffered lost wages and other benefits of employment and has suffered emotional pain, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

90.     Defendants' conduct was outrageous because of their evil motive and reckless indifference to the rights of Messina in wrongfully terminating his employment in retaliation for reporting these wrongful acts.

WHEREFORE, Plaintiff prays this Court to enter judgment in his favor and against Defendants and thereafter:

A.     Order Defendants to make Plaintiff whole for any and all loses or damages he has suffered including lost wages and other benefits of employment;

B.     Award damages to Plaintiff for his emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation;

C.     Award Plaintiff punitive damages against the Defendants named herein in their individual capacities in such sums as this court believes will serve to punish them and to deter them and others from like conduct;

D.     Award Plaintiff the costs of this action, together with his reasonable attorneys' fees; and

E.     Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

## COUNT V – WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY – ACTING IN A MANNER PUBLIC POLICY WOULD ENCOURGAGE

For Count V of his cause of action against all Defendants, Plaintiff Messina states as follows:

91.     Plaintiff incorporates by reference as if fully set forth herein paragraphs 1 through 90 of his complaint.

92.     Messina's termination was in contravention of Missouri public policy, which prohibits an at-will employee from being terminated for acting in a manner public policy would encourage.  Specifically, Missouri public policy would encourage a police officer to refuse to participate in a quota system and would encourage a police officer to criticize ticket and arrest quotas designed to generate revenue for a City rather than to serve legitimate law enforcement and public safety needs.  Missouri public policy would also encourage an officer to criticize a quota system's negative effect on officer morale and to question whether such a system is contrary to the best interests of the citizens of a city that the officer has sworn to protect and to serve, without fear of retaliation and/or the loss of the officer's job.

93.     As a result of his termination in violation of public policy, Messina has suffered lost wages and other benefits of employment and has suffered emotional pain, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

94.     Defendants' conduct was outrageous because of their evil motive and reckless indifference to the rights of Messina in wrongfully terminating his employment in retaliation for taking actions that the public policy of the State of Missouri would encourage.

WHEREFORE, Plaintiff prays this Court to enter judgment in his favor and against Defendants and thereafter:


A.      Order Defendants to make Plaintiff whole for any and all loses or damages he has suffered including lost wages and other benefits of employment;

B.      Award damages to Plaintiff for his emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation;

C.      Award Plaintiff punitive damages against the Defendants named herein in their individual capacities in such sums as this court believes will serve to punish them and to deter them and others from like conduct;

D.      Award Plaintiff the costs of this action, together with his reasonable attorneys' fees; and

E.      Grant such other and additional relief as may appear to the Court to be equitable and just under the circumstances.

Respectfully submitted,

PLEBAN & ASSOCIATES, LLC



By   /s/ Lynette M. Petruska
    C. John Pleban #4066
    Lynette M. Petruska, #15880
    2010 S. Big Bend Blvd.
    St. Louis, MO  63117
    Telephone:  314-645-6666
    Facsimile:  314-645-7376

    Attorneys for Plaintiff